IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

ALAJUAN ROBINSON and
REGGIE ROBINSON EL,

       Plaintiffs,


     v.                            Civil Action No.: 1:18-cv-151
                                       (Judge Kleeh)

SGT. PINTEZ, of Monongalia County
Sheriff's Dept.,
SGT. J.D. MORGAN, of Monongalia
County Sheriff's Dept., and
JOHN DOE Tow Truck Driver, WaterFront
Towing, LLC, in their individual and
official capacities,

       Defendants.

MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION
CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART
AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING
MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT.
NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING
THE CASE FROM THE DOCKET

    *Pro se* Plaintiffs, Alajuan Robinson and Reggie Robinson El

("Plaintiffs"), filed a "Civil-Human Rights Complaint with a

Demand for Jury Trial" ("Complaint") in the Circuit Court of

Monongalia County, West Virginia on July 16, 2018 [Dkt. No. 1-1].

On August 7, 2018, Defendants, Sgt. Pintez and Sgt. J.D. Morgan

("Defendants"), filed a notice of removal stating that because the

action was brought pursuant to 42 U.S.C. § 1983, the United States

District Court had original jurisdiction over the case and

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

supplemental jurisdiction over any state law allegations. [Dkt. No. 1].

As Plaintiffs are *pro se*, the matter is before Magistrate Judge Michael J. Aloi pursuant to the August 8, 2018, Order of Referral [Dkt. No. 3] entered by Senior United States District Judge Irene M. Keeley.[1]  On August 14, 2018, Defendants filed a *Motion to Dismiss* [Dkt. No. 8], to which Plaintiffs responded on September 6, 2018 [Dkt. No. 18] after the issuance of a Roseboro Notice on August 23, 2018 [Dkt. No. 14].  On December 26, 2018, Plaintiffs filed a *Notice of Filing Motion for Remand and Motion for Remand* [Dkt. No. 50], to which Defendants responded in opposition on January 7, 2019 [Dkt. No. 51].  The magistrate judge issued a separate Report and Recommendation ("R&R") for the *Motion to Dismiss* [Dkt. No. 38], and *Motion for Remand* [Dkt. No. 53]. Plaintiffs filed objections to each R&R [Dkt. Nos. 40 and 56], and the matters are now ripe for adjudication.

## I.   <u>Standard of Review</u>

The magistrate judge makes only a recommendation to this Court.  The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the

---

[1] On December 1, 2019, the case was reassigned to United States District Judge Thomas S. Kleeh [Dkt. No. 49].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  This Court is charged with making a de novo determination of those portions of an R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

## II.  Motion for Remand

Defendants removed Plaintiffs' action to this Court on August 7, 2018, because Plaintiffs' claims were brought pursuant to 42 U.S.C. § 1983 [Dkt. No. 1].  Defendants assert that the Court has original jurisdiction over Plaintiffs' constitutional claims and supplemental jurisdiction over any state law claims [Id.].  On December 26, 2018, Plaintiffs filed a Notice of Filing Motion for Remand and Motion for Remand [Dkt. No. 50] making six arguments for the case to be returned to Monongalia Circuit Court.  As summarized in the R&R [Dkt. No. 53], the arguments for remand include:  1) the United States District Court lacks subject matter jurisdiction; 2) the Notice of Removal is defective; 3) a legal presumption against removal exists which has not been overcome; 4) the Monongalia County Circuit Court is capable of handling the state and federal claims raised by Plaintiffs; 5) no diversity jurisdiction exists; and 6) Defendants cannot enforce a right

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

within the jurisdiction[2] [Dkt. No. 50 at 1-2].  The R&R recommends that the motion for remand be denied [Dkt. No. 53 at 1], and the Court agrees.

**a. Legal Standard**

The removal statute, 28 U.S.C. § 1441, allows a state court defendant to remove a case to a federal district court if the state court action could have originally been filed there.  See Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 186 (4th Cir. 2002).  Federal courts are courts of limited jurisdiction, and a district court is charged with ensuring that all cases before it are properly subject to such jurisdiction.  Kokkonen v. Guardian Life In. Co. of America, 511 U.S. 375, 377 (1994); In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998).  The burden is

---

[2] The magistrate judge includes a footnote in the R&R that states "the last two paragraphs of the Motion to Remand page 8 are irrelevant as Plaintiffs' Complaint does not contain any allegations of violations of the South Carolina Code, there is no mention of a First Amendment claim nor defense in any pleading, there is no mention of the Lanham Act in any pleading, there is no state law trademark claim, and there is no Defendant 'TEC'" [Dkt. No. 53 at 2, n.2].  The Court notes that, of Plaintiffs' eleven-page filing for remand, the legal analysis on pages two through eight is identical to the legal analysis set forth in a memorandum of law in support of a motion for remand filed in a South Carolina District Court case that does not involve these parties, that is The Protestant Episcopal Church in the Diocese of South Carolina, et al. v. The Episcopal Church, et al., 2:13-cv-893, Dkt. No. 9-1 at 5-11 (U.S.S.C. Apr. 10, 2013).  With the exception of the six brief arguments added to the beginning of the motion for remand and a paragraph at page nine requesting the matter be returned to the Monongalia Circuit Court "as the grounds for removal of this matter are not sufficient and constitute an abuse of power," both of which are in a font and format distinct from that of the remainder of the filing, Plaintiffs offer no original support their remand request [Dkt. No. 50].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

on the removing defendant to establish subject matter jurisdiction. Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994).

Generally, a case can be filed in a federal district court only if there is diversity of citizenship under 28 U.S.C. § 1332, or if there is federal question jurisdiction under 28 U.S.C. § 1331. "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)(internal citation omitted); see Harless v. CSX Hotels, Inc., 389 F.3d 444, 450 (4th Cir. 2004).

**b. Discussion**

Here, the Complaint alleges causes of action under the Fourth and Fifth Amendments of the United States Constitution and Article II, Section 10 of the West Virginia Constitution in relation to a police traffic stop that occurred on June 13, 2017, in Morgantown, West Virginia [Dkt. No. 53 at 1-2]. The Complaint states in its first paragraph that it is an action filed pursuant to 42 U.S.C.

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

§ 1983 [Dkt. No. 1-1]. While state courts have concurrent jurisdiction over claims brought under 42 U.S.C. § 1983, Hutchinson v. City of Huntington, 479 S.E.2d 649 (W. Va. 1996), that fact alone is insufficient to prohibit removal. Plaintiffs' pleading alleges claims over which this Court has both original and supplemental jurisdiction.

### c. Conclusion

The Court agrees with the magistrate judge's recommendation and **FINDS** that there is federal question jurisdiction based on the face of the Complaint. Because the state law claim, alleging a violation of Article III, Section 10 of the West Virginia Constitution, stems from the same conduct described in Plaintiffs' federal constitutional claims, the Court **FINDS** that it has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367. The Court **ADOPTS** the R&R [Dkt. No. 53] as to the Plaintiffs' *Motion for Remand* [Dkt. No. 50], and the motion is **DENIED**.

### III. Motion to Dismiss[3]

In the R&R addressing Defendants' motion to dismiss under

---

[3] The *Motion to Dismiss* [Dkt. No. 8] was filed in lieu of an Answer by Defendants Sgt. Pintez and Sgt. Morgan. Defendant John Doe, tow truck driver with WaterFront Towing LLC, filed an Answer denying Plaintiffs allegations [Dkt. No. 7].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION
FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE
REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38],
DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT.
NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

Rule 12(b)(6) of the Federal Rules of Civil Procedure, the
magistrate judge recommends that the Court dismiss the specific
monetary amount pled by Plaintiffs in the Complaint, the duplicate
Fourth Amendment claim in the second cause of action, and the §
1983 claims with regard to Defendants Pintez and Morgan in their
official capacities [Dkt. No. 38 at 1].  The R&R further recommends
that the motion to dismiss be denied with regard to the § 1983
claims brought against Defendants Pintez and Morgan in their
individual capacities.[4]

### a. Legal Standard

As to the failure to state a claim, "Rule 12(b)(6) authorizes
a court to dismiss a claim on the basis of a dispositive issue of
law."  Neitzke v. Williams, 490 U.S. 319, 326 (1989).  The
"complaint must contain sufficient factual matter, accepted as
true, to 'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.
Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although *pro se*

---

[4] The R&R found that the *Motion to Dismiss* by Pintez and Morgan did not challenge
whether there was a substantive right under the West Virginia Constitution
Article III, Section 10, nor did it challenge the § 1983 individual-capacity
claims against Defendants. [Dkt. No. 38 at 3, n.1 and 5, n.2].  The Court
disagrees and construes the *Motion to Dismiss* [Dkt. No. 8], supporting
memorandum [Dkt. No. 9 at 14], and reply in support of the *Motion to Dismiss*
[Dkt. No. 21] as a challenge to the sufficiency of all claims pending against
Defendants, whether in their official or individual capacities.  Defendants
argue that the "Complaint in this matter fails in various manners on all Counts
against these Defendants," and request that the Court "dismiss them from all
claims, with prejudice" [Dkt. No. 9 at 14].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

complaints are to be liberally construed, a plaintiff must do more than make vague and conclusory statements to state a claim for relief. Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1993). A plaintiff must allege facts that actually support a plausible claim for relief. Iqbal, 556 U.S. at 678.

Courts liberally construe *pro se* documents and hold them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 5 (1980)(per curiam). The liberal construction that is afforded *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim, it should do so, but a district court need not rewrite a complaint to "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). "Liberal construction" does not mean that a court will ignore a clear failure in the pleadings to allege facts which set forth a claim cognizable in federal court." Weller v. Dep't. of Social Servs., 901 F.2d 387 (4th Cir. 1990). Finally, in evaluating a complaint, the court may anticipate affirmative defenses which are clear on the face of the complaint. Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); Nasim v. Warden, Md. House of Correction, 64 F.3d 951,

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

954 (4th Cir. 1995)(en banc)(court may apply common sense and reject fantastic allegations and/or rebut them with judicially noticed facts).

A review of the Complaint reflects multiple reasons why summary dismissal is appropriate.[5] Plaintiffs' Complaint generally states that "[t]his is a civil-human rights action filed pursuant to 42 U.S.C. § 1983," and makes reference to "defendants acting under color of law enforcement" [Dkt. No. 1-1 at 1].

To state a § 1983 claim, a plaintiff must allege facts indicating: "(1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person under the color of state law." See West v. Atkins, 487 U.S. 42, 48 (1988). While a complaint need not expressly invoke § 1983 as the legal theory for a claim, the Supreme Court has instructed that a complaint "must plead facts sufficient to show that [a] claim has substantive plausibility."

---

[5] The Court notes that the Complaint does not appear to comply with Rule 8(a) of the Federal Rules of Civil Procedure. A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2). Plaintiffs' complaint is nine (9) pages, with fifty-four (54) single-spaced paragraphs that include random constitutional phrases, inapplicable legal principles, and irrelevant case law citations [Dkt. No. 1-1]. While Plaintiffs are *pro* se, the Complaint states that a first draft was completed on September 11, 2017, but "Dated and signed by Plaintiff's [sic]" on July 16, 2018 [Id. at 9]. It also states that it was "Prepared by: Self-Help Litigation and The Monongahela Muurish American Divine Coalition kmtshbzz@yahoo.com, Hookum7@gmail.com, Morgantown, WV 26501" [Id.].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

Johnson v. City of Shelby, 135 S.Ct. 346 (2015)(citing Iqbal, 556 U.S. at 676-77).   In the Court's opinion, the allegations of Plaintiffs' Complaint fail to meet this minimal pleading standard.

### b. Claims Based on "Washitaw" or "Moorish Nation" Membership

Plaintiffs' constitutional claims relate to a "Moorish Nation" jurisdictional theory that courts have routinely rejected as frivolous[6] [Dkt. No. 1-1 and 28].   Plaintiffs' Complaint includes the following statement within a section entitled "TAKE DUE NOTICE ALL GOVERNMENT OFFICIALS, SERVANTS, JUDGES, LAYERS

---

[6] Without discussing the Moorish Nation at length, the Court acknowledges that various courts have recognized organizations such as the Washitaw or Moorish Nation as "notorious organization[s] of scofflaws and ne'er-do-wells who attempt to benefit from the protections of federal and state law while simultaneously proclaiming their independence from and total lack of responsibility under those same laws." See Sanders-Bey v. United States, 267 F. App'x 464, 466 (7th Cir. 2008)(holding that "the Washitaw Nation … is not recognized by the United States Government"); Bybee v. City of Paducah, 46 F. App'x 735, 736-37 (6th Cir. 2002)(finding that the "Nation of Washitaw" is "fictional"); United States v. Gunwall, No. 97-5108, 1998 U.S.App. LEXIS 18596, at *11 (10th Cir. Aug. 12, 1998)(rejecting claim that the court had no jurisdiction over a member of the Washitaw as "frivolous"); Bey v. Louisiana, No. 08-cv-0250, 2008 WL 4072747 (W.D.La. July 2008)(finding that plaintiff's claim to land as a member of the Washitaw was "patently frivolous" and rested on documents of "dubious legal significance"); Great Seal Nat'l Ass'n of Moorish Affairs v. 46th Dist. Ct. of Oakland County, No. 06-cv-15625, 2007 U.S. Dist. LEXIS 3199, 2007 WL 169850 at *2 (E.D.Mich. Jan. 17, 2007)(dismissing claim that plaintiffs owned several parcels of property by virtue of their Moorish ancestry as "baseless, fantastic, and delusional" and finding the complaint to be "indecipherable"); Khattab El v. U.S. Justice Dep't., No. 86-6863, 1988 U.S. Dist. LEXIS 544, 1988 WL 5117 at *5 (E.D.Pa. Jan. 22, 1988)(holding that "the United States has not recognized the sovereignty of the Moorish Nation, thus precluding sovereign immunity claims); see also El-Bay v. North Carolina Dep't. of Health & Human Serv., No. 1:09-cv-693, 2010 WL 520877 at *2 (M.D.N.C. Feb. 9, 1990)(finding plaintiff's claims of being entitled to certain rights under international laws and treaties as a member of the "Unity Washitaw Mu'ur (Moor) Empire" to be incorrect); El-Bey v. United States, No. 1:08cv151, 2009 WL 1019999 (M.D.N.C. Jan. 26, 2009)(unpublished).

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

[SIC], CLERKS, EMPLOYEES": "Where there is no jurisdiction there is no judge; the proceeding is as nothing. Such has been the law from the days of the Marshalsea, 10 Coke 68; also Bradley v. Fisher 13 Wall 335, 351." [Id. at 5-6].  That Plaintiffs rely on a frivolous theory and its related tenets concerning the limits of police power and governmental authority is also supported by the *Averment of Jurisdiction-Quo Warranto* [Dkt. No. 28] filed in this matter.  The averment appeared to demand that the United States District Judge, counsel for Defendants, the Monongalia County Sheriff's Department, Sgt. Pintez, Sgt. J.D. Morgan, John Doe (Employee of WaterFront Towing LLC), and WaterFront Towing LLC, produce a certificate of "Delegation of Authority," or proof of jurisdiction, and information related to the "Public Hazard Bonding of Corporate Agents"[7] [Id. at 2].  To be clear, any claims or arguments raised by Plaintiffs which arise from alleged membership in a "Moorish Nation" organization, or which rely on documents or arguments based on doctrines from such an

---

[7] The document filed by Plaintiffs is a boilerplate, fillable form widely available on the internet and its complete title is as follows: "THE MOORISH NATIONAL REPUBLIC FEDERAL GOVERNMENT NORTHWEST AFRICA, THE MOORISH DIVINE AND NATIONAL MOVEMENT OF THE WORLD, *Northwest Amexem/Northwest Africa/North America*, The North Gate, Societas Republicae Ea Al Maurikanos, Aboriginal and Indigenous National Peoples of the Land, The true and de jure Al Moroccans/Americans, Averment of Jurisdiction-Quo Warranto, For the Record, To be Read into the Record, Notice to Agent is Notice to Principal – Notice to Principal is Notice to Agent." [Dkt. No. 28].

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

organization, are frivolous and cannot support an action in this Court. See Bey v. Hillside Twp. Municipal Court, 2012 WL 714575 at *6 (D.N.J. March 5, 2012)(describing the Moorish American Nation as an imaginary creation, and finding that "[a]ny claims or arguments raised by plaintiff which are based on his membership in the Moorish American Nation are [by definition] frivolous.").

   **c. Complaint Allegations**

   The Complaint states that Plaintiff Reggie Robinson El[8] is "A Washitaw Moor National since (October) 17, 2017," and that Plaintiff Alajuan Robinson "is the son of Reggie Robinson El" and "is A Washitaw MOOR National" [Dkt. No. 1-1 at 2]. The Complaint further alleges in its "Statement of Facts" that Plaintiff Alajuan Robinson was operating a Blue 2001 Explorer on Greenbag Road in Morgantown, West Virginia, on the evening of June 13, 2017, when he was stopped by Defendant Pintez, a sergeant with the Monongalia County Sheriff's Department, for an improper license plate [Dkt. No. 1-1 at 2]. When Plaintiff was asked by Defendant what kind of license plate was on the vehicle, Plaintiff responded with "A Moorish American Diplomat Plate" [Id.]. Plaintiff was asked to produce his driver's license and registration for the vehicle, and

_____

[8] Documents filed by Plaintiff Reggie Robinson El with the Monongalia County Circuit Court reflect that he is also known by the legal name Reginald Donnel Robinson [Dkt. No. 4-5 at 4].

he told the Defendant that he "was not required by law to show the officer the items because he was just simply travelling and <u>not</u> conducting commerce in the vehicle" [<u>Id.</u> (underlining in original)].  Plaintiff and the vehicle occupants were asked to step out of the vehicle, and Defendant Pintez placed handcuffs on Plaintiff which he advised was for the officer's personal safety [<u>Id.</u>].

Plaintiff was told he was being charged with obstruction of justice, and Pintez called for backup with Defendant Morgan arriving thereafter [<u>Id.</u>].  The Complaint states that Plaintiff informed the Defendants "of his intent to exercise his right to travel the streets and highways freely without fear of detainment, harassment or molestation" [<u>Id.</u>].  According to Plaintiffs' statement of facts, Defendant Morgan laughed and "told him that he watches too much facebook" [<u>Id.</u>].  The other vehicle occupants called Alajuan Robinson's father, Reggie Robinson El, and Alajuan was placed in the back of a police car "until plaintiff's father arrived on the scene" [<u>Id.</u>].

When Plaintiff Reggie Robinson El arrived, "he immediately put defendants On verbal notice that the Plaintiffs reserve all constitutional Rights without prejudice (UCC 1-308)" [Dkt. No. 1-1 at 2] (capitalization and Uniform Commercial Code citation in

original).  Plaintiff Robinson El then asked Defendants for their "names, badge numbers and proof of security bonds" [Id. at 3].  He also asked Defendants why his son was being detained, and was informed that Alajuan Robinson would be charged with obstruction of justice for refusing to produce a license and registration when instructed by a police officer [Id.].  Plaintiff Robinson El asked that the officers release his son to him and "the defendants complied" [Id.].

Plaintiffs further allege that a WaterFront Towing employee arrived "and seized Plaintiff's Vehicle without his consent" [Dkt. No. 1-1 at 3].  When Plaintiff Robinson El asked why his personal property was being taken, Defendant Morgan advised him that "driving in the State of WV is a privilege, not a right, and that the State of WV requires all vehicles to be registered with the State" [Id.].  Plaintiffs assert that Robinson El was told by Defendants that he would receive a copy of the paperwork in the mail, and would need to get in touch with WaterFront Towing about the vehicle [Id.].  As of the date Plaintiffs filed their Complaint, July 16, 2018, they claim to not have received any paperwork relating to a charge against Alajuan Robinson, or "proper notice as promised verifying the seizure i.e. towing of plaintiffs [sic] property on June 13, 2017" [Id.].  Plaintiffs allege that

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

"[o]nce the father (owner) of the vehicle arrived there was no sufficient cause that would excuse an 'otherwise' unlawful seizure of the property. Defendants promised to mail the plaintiff's an official report, Itemization of the property seized. Defendants also seized plaintiff's Moorish National License Plate" [Id.]. On the basis of these facts, Plaintiffs filed suit in the Circuit Court of Monongalia County, West Virginia.

The Complaint sets forth four separate causes of action which are substantively difficult to distinguish – three against Defendants Pintez and Morgan, and one against John Doe, tow truck driver for WaterFront Towing LLC [Dkt. No. 1-1]. The Complaint is confusing and consists of little more than conclusory statements that rights or laws have been violated. Other than the "Statement of Facts" described above, the Complaint does not contain factual allegations from which the Court can draw any inference of misconduct by Defendants.[9]

In the R&R, the magistrate judge summarizes Plaintiffs' four causes of action as follows: 1) a violation of Fourth and Fifth Amendments, as well as the West Virginia Constitution, for the alleged illegal seizure of the vehicle and the alleged illegal

---

[9] The Complaint is an example of "an unadorned, the-defendant-unlawfully-harmed-me" Complaint which only "offers 'labels and conclusions' or 'a formulaic recitation of the elements of [] cause[s] of action.'" Iqbal, 129 S.Ct. at 1949.

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

seizure of Plaintiff Alajuan Robinson's person; 2) an alleged violation of the Fourth and Fifth Amendments, as well as the West Virginia Constitution, for the alleged failure of police officers to provide Plaintiffs with paperwork detailing the reasons for the seizure of the property; 3) an alleged violation of the Fourth and Fifth Amendments, as well as the West Virginia Constitution, for an illegal search of the vehicle; and 4) an alleged violation of due process by the tow truck driver for being complicit in the "unlawful seizure of plaintiff's property" [Dkt. No. 38 at 2]. In the prayer for relief, Plaintiffs seek $500,000 dollars in compensatory damages from each Defendant and $500,000 in punitive damages from each Defendant for associated "mental and emotional suffering, loss of esteem, willful, and egregious deprivation of rights" [Dkt. No. 1-1 at 8-9].

### d. Discussion

The Court finds that the Complaint does not plead facts sufficient to show that any claim against Defendants is viable or has substantive plausibility. The pleading contains vague, conclusory statements that Defendants unlawfully seized Plaintiff Robinson El's vehicle and Plaintiff Alajuan Robinson's person, but does not allege that the traffic stop was unlawful, or that the vehicle operated by Plaintiff Alajuan Robinson was properly

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

registered and licensed under West Virginia law. See W.Va. Code § 17A-3-2(a) (2018) (Every motor vehicle, etc., subject to registration and certificate of title provisions; exceptions). Nor is it alleged that Defendants were abusive or used unreasonable tactics in their treatment of Plaintiffs. On the contrary, Plaintiffs concede that Alajuan Robinson was operating an unregistered vehicle with a fictitious license plate on a public road at the time of the traffic stop. Plaintiffs further concede that Alajuan Robinson refused to show his driver's license and vehicle registration to Defendant Pintez, a law enforcement officer, upon request. See W.Va. Code § 17-A-3-1 (2018) (Misdemeanor to violate provisions of article; penalty);[10] W.Va. Code § 17A-3-13 (2018) (Registration card to be signed, carried and exhibited on demand).

Plaintiffs assert that Alajuan Robinson's operation of the improperly licensed vehicle occurred on Greenbag Road in Morgantown, West Virginia [Dkt. No. 1-1 at 2]. The Morgantown City Code ("MCC") of ordinances specifically applies to motorists and vehicles in the city, reiterates the licensing and registration

---

[10] Under West Virginia law, "it is unlawful for any person to drive or move *or for an owner knowingly to permit to be driven or moved upon any highway* any vehicle of a type required to be registered under this article which is not registered or for which a certificate of title has not been issued or applied for or for which the appropriate fee has not been paid when and as required under this article…." W.Va. Code § 17A-3-1(a)(2018)(emphasis supplied).

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

requirements under state law, and authorizes law enforcement officers to enforce state and local traffic codes within city limits. See MCC § 351.01 (Registration, certificate of title required); § 351.03 (Display of registration plates); § 351.04 (Operation of vehicle without evidence of registration; use of temporary facsimile); § 351.05 (Improper use of registration card, plate or permit); § 351.06 (Driver or motorcycle license required); § 351.08 (Display of license); and § 351.11 (Owner or operator allowing another to drive). The city code also makes clear the circumstances under which an officer is authorized to impound a vehicle, including "*[w]hen any vehicle displays illegal license plates or fails to display the current lawfully required license plates*". See MCC § 307.01(d)(emphasis supplied). The city code includes provisions governing notice to a vehicle owner of impoundment, liability of the owner for costs of impoundment, and the process by which an owner may request a post-storage hearing for impounded vehicles. See MCC § 307.02, § 307.03, and § 307.04. While Plaintiffs' Complaint alleged that they "still have not received any paperwork relating to the charges against Plaintiff Alajuan Robinson," it also states that Plaintiffs did not receive "*proper notice* as promised verifying the seizure i.e. towing of plaintiffs [sic] property on June 13, 2017" [Dkt. No. 1-1 at 2

18

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

(emphasis supplied)].

To the extent Plaintiffs believe that their status as "Washitaw MOOR Nationals" allows them to ignore West Virginia law, or entitles them to some extraordinary notice of the impoundment process for unregistered and improperly licensed vehicles than that set forth in Morgantown's City Code, they are mistaken. Regardless of which real or imaginary organization Plaintiffs self-identify with as members, they remain subject to the laws of the United States, the state of West Virginia, and, while within its city limits, the City of Morgantown.[11] See Allah El v. Dist. Att'y for Bronx County, 2009 WL 3756331 at *1 (M.D.N.Y. Nov. 4, 2009)("Petitioner's purported status as a Moorish-American citizen does not enable him to violate state and federal law without consequence"); United States v. James, 328 F.3d 953, 954 (7th Cir. 2003)("Laws of the United States apply to all persons within its borders").  Plaintiffs are not personally immune from the enforcement of traffic laws simply because they claim membership in the Moorish Nation.  Plaintiffs' Complaint allegations are

---

[11] Even if Plaintiffs relinquished their United States citizenship, each would be an "alien" as defined in 8 U.S.C. § 1101(a)(3) and 8 U.S.C. § 1481, and obligated to obey the laws of the United States and individual states.  See Leonard v. Eley, 151 F.2d 409, 410 (10th Cir. 1945); Allah El v. Dist. Att'y for Bronx County, 2009 WL 3756331 at *1 ("Those who have voluntarily relinquished their citizenship, like other aliens, must obey the federal and applicable state laws, just as native-born and naturalized citizens are required to do.").

inadequate to state a plausible claim for violations of a constitutional right. As it stands, Plaintiffs have asserted no supporting facts that might suggest why they believe their constitutional rights were violated other than their alleged status as Washitaw Moor Nationals.

The factual allegations contained in the Complaint show that Plaintiff Alajuan Robinson was stopped as he was operating an improperly licensed and registered vehicle, that he refused a request by law enforcement to produce a driver's license and registration, and that he was briefly handcuffed for officer safety [Dkt. No. 1-1 at 2]. It shows that Plaintiff was advised that he would be charged with obstruction of justice and was immediately released to his father when Robinson El arrived at the scene of the traffic stop [Id.].

The allegations also show that when Plaintiff Reggie Robinson El, the owner of the vehicle, arrived and requested that law enforcement release his son, his request was honored [Dkt. No. 1-1 at 2]. Robinson El was then advised that his son would be charged with obstruction of justice for refusing to produce a driver's license and registration, and then he demanded to know why his improperly licensed vehicle was being "seized" without his "consent" [Id. at 3]. By Plaintiffs' own allegations, they were

informed by one of the Defendants that driving in West Virginia is a privilege and not a right, and that proper vehicle registration is required. These factual allegations are entirely consistent with West Virginia law and Morgantown's city code governing traffic laws and vehicles, and do not support a claim of constitutional deprivation.

Importantly, none of the allegations indicate that Defendants personally violated the constitutional rights of either Plaintiff. The four causes of action listed are conclusory and contain generalized terms that Plaintiffs were entitled to "due process before seizure and property deprivation," and that Plaintiff Alajuan was deprived of the "freedom to travel" and subjected to "some degree of stopping and demanding identification" "without any specific basis for believing" he was involved in criminal activity [Id. at 3-4]. They further state that Plaintiff Robinson El was told "they would mail him (paperwork) detailing the reasons for the immediate seizure of his property, then did not provide" Plaintiff with notice of seizure by "police action" [Id. at 4]. Plaintiffs' own assertions establish that they were given notice of the actions being taken against them during the traffic stop. Yet there is no allegation that Plaintiff's vehicle is still in the possession of the Monongalia Sheriff's Department, WaterFront

Robinson v. Sgt. Pintez, et al.                    Civil Case No.: 1:18cv151

MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION
FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE
REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38],
DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT.
NO. 8], AND STRIKING THE CASE FROM THE DOCKET

Towing LLC, or any Defendant, or that Alajuan Robinson's detention was unreasonably extended or that he was mistreated.  There is also no assertion that Defendants exceeded the authority given to them under state and municipal code sections, or that they conducted themselves in an unreasonable manner given the circumstances and Alajuan Robinson's refusal to produce a copy of his driver's license and vehicle registration upon request.

It is well settled that a law enforcement officer has authority to stop a motor vehicle and conduct an investigative detention when reasonable and articulable suspicion exists that an individual is engaged in illegal conduct.  See U.S. v. Sharpe, 470 U.S. 675 (1985).  The initial stop and temporary detention are justified if the motorist has committed a traffic violation.  See Whren v. United States, 517 U.S. 806 (1996).  There is no question that West Virginia law requires vehicles to be properly registered with the Department of Motor Vehicles, and that the registration and license plate must be displayed on the vehicle.  In West Virginia, it is unlawful for a person to knowingly display a fictitious plate.  Motorists must be licensed, carry their driver's license while operating a vehicle, and produce and exhibit that license upon the request of an officer.

Based on the Complaint, Defendant Pintez had probable cause

to believe that Plaintiff Alajuan Robinson committed a traffic violation by driving a vehicle with a fictitious plate, and further, by refusing to provide his driver's license and registration once stopped. By Plaintiffs' own facts, any temporary detention of Alajuan Robinson and search of the vehicle was reasonable and necessitated by Plaintiff's behavior. While the permissible length of a traffic stop cannot be determined "with mathematical precision," the "appropriate constitutional inquiry is whether the detention lasted longer than necessary, given its purpose." See United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008), cert. denied, 129 S.Ct. 943 (2009). When a driver contributes to a delay during a traffic stop – "for example, by providing inaccurate information" – a longer traffic stop would not be unreasonable. Id. Any delay in the traffic stop was caused by the refusal of Alajuan Robinson to produce his license and registration once stopped for operating a vehicle with an unlawful license plate. No facts alleged by Plaintiffs suggest the stop or detention of was longer than necessary to accomplish its purpose. Nor do the facts support Plaintiffs' claim that impoundment of the vehicle and seizure of the unlawful license plate were improper, or without due process. See MCC § 307.01 and § 351.05. Plaintiffs' constitutional claims against Defendants Pintez and Morgan,

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

whether in their individual or official capacities[12] and couched in the Fourth and Fifth Amendments or the West Virginia Constitution, fail as a matter of law and should be dismissed with prejudice.

The Supreme Court of the United States has held that more than conclusory statements are required to state a plausible claim. Iqbal, 556 U.S. at 677-79. A plaintiff must sufficiently allege specific facts that support a plausible claim for relief, and Plaintiffs' Complaint fails to do so. The Fourth Circuit Court of Appeals has instructed that courts should not ignore a *pro se* party's "clear failure to allege facts that set forth a cognizable claim." See Wilson, 699 F.3d at 797. "Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). Moreover, liability under § 1983 requires personal involvement. Iqbal, 556 U.S. at 676. A

---

[12] As discussed by the magistrate judge in the R&R, "A plaintiff [who is seeking] to impose liability on a municipality under § 1983 [is] to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. Of Cnty. Comm'rs of Bryan Cnty., Oklahoma v. Brown, 520 U.S. 397 (1997)(citing Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978)) [Dkt. No. 38 at 8]. For a governmental entity to be liable under a § 1983 claim, it must be shown that the governmental entity's "policy or custom" "played a part in the violation of federal law." [Id.]. Plaintiffs' Complaint fails to allege any fact sufficient to make an official capacity § 1983 claim against Defendants Pintez and Morgan as deputies with the Monongalia County Sheriff's Department.

plaintiff must affirmatively state facts indicating that a defendant acted personally in the deprivation of his constitutional rights. <u>Vinnedge v. Gibbs</u>, 550 F.2d 926, 928 (4th Cir. 1977); <u>Faltas v. South Carolina</u>, 2012 WL 988105 (D.S.C.), <u>adopted</u> <u>by</u> 2012 WL 988083 (D.S.C.), <u>aff'd</u> <u>by</u> 489 Fed.Appx. 720 (4th Cir. 2012). Plaintiffs fail in this regard and summary dismissal is appropriate.[13]

Additionally, the allegations in Plaintiffs' Complaint against Defendant John Doe, tow truck driver for WaterFront Towing LLC, must also fail. A privately-employed tow truck driver is not a "a person acting under state law" as required for a § 1983 claim. <u>See</u> <u>West v. Atkins</u>, 487 U.S. at 48. Nor does the Court believe Plaintiffs have stated a claim that a right secured by the Constitution or laws of the United States was violated, which extends to any action by a tow truck driver in impounding a vehicle that was operated in violation of state and local law. Dismissal of the claim against Defendant John Doe is warranted.

### e. Conclusion

For the reasons stated, the Court **FINDS** that Plaintiffs'

---

[13] The magistrate judge's R&R analyzes the *Motion to Dismiss* arguments related to immunity provided Defendants Pintez and Morgan, as employees of a political subdivision, pursuant to West Virginia Code § 12-12A-5(b), and the propriety of Plaintiffs' prayer for relief request for specific monetary damages under West Virginia Code § 29-12A-6(d) [Dkt. No. 38 at 9-11]. The Court need not address these issues since dismissal of claims against all Defendants is warranted.

**MEMORANDUM ORDER ADOPTING THE REPORT AND RECOMMENDATION CONCERNING MOTION FOR REMAND [DKT. NO. 53], REJECTING IN PART AND ADOPTING IN PART THE REPORT AND RECOMMENDATION CONCERNING MOTION TO DISMISS [DKT. NO. 38], DENYING MOTION FOR REMAND [DKT. NO. 50], GRANTING MOTION TO DISMISS [DKT. NO. 8], AND STRIKING THE CASE FROM THE DOCKET**

Complaint fails to state a plausible claim for relief against any Defendant, and dismissal with prejudice is proper.  The Court **REJECTS the R&R** [Dkt. No. 38] to the extent that it recommends **DENYING** Defendants' *Motion to Dismiss* [Dkt. No. 8] for claims against Defendants Sgt. Pintez and Sgt. Morgan in their individual capacities.  The Court **ADOPTS the R&R** to the extent that it recommends **GRANTING** the *Motion to Dismiss* for the official-capacity claims against Defendants Pintez and Morgan.  The Court **GRANTS** the *Motion to Dismiss* [Dkt. No. 8] **in its entirety WITH PREJUDICE**, and further **FINDS that the case,** brought pursuant to 42 U.S.C. § 1983, **cannot proceed against Defendant John Doe**, a tow truck driver for WaterFront Towing LLC, a non-governmental entity.

The Court further **DIRECTS** the Clerk of Court to **STRIKE** this matter from the Court's active docket.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record and to the *pro se* parties, via certified mail, return receipt requested.

**DATED:** September 10, 2019

/s/ Thomas S. Kleeh
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE